IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA, *ex rel.* JIM SOUTHARD,<br><br>    Plaintiff,<br><br>    v.<br><br>KIPPER TOOL COMPANY,<br><br>    Defendant. | Civil Action No.<br><br>2:23-CV-225-RWS |

## ORDER

This case comes before the Court on Plaintiff Jim Southard's Motion to Disqualify attorney Matthew Tyler Smith, Esq. and his firm from representing Defendant Kipper Tool Company ("Kipper"). [Dkt. 139 – Pl.'s Mot. to Disqualify]. After reviewing the Motion and record, the Court enters the following Order.

### BACKGROUND

Mr. Smith began has served as Kipper's corporate for over 20 years and entered his appearance representing Kipper in this action on October 31, 2023, after the case was transferred to this Court. [Dkt. 142-1 – Decl. of Smith at ¶ 4; Dkt. 84 – Notice of Appearance]. Mr. Smith is a partner at Smith, Gilliam,

Williams & Miles, P.A. ("SGWM")—a firm of 12 attorneys headquartered in Gainesville, Georgia. [Dkt. 139, at 2]. Smith and SGWM currently defend Kipper against Mr. Southard's False Claims Act lawsuit. [Id. at 3].

On July 1, 2024, Mr. Southard hired Mr. Smith's law partner—Kelly Anne Miles—to represent him in a domestic matter. [Dkt. 139-1 – Decl. of Jim Southard, at ¶ 5]. Mr. Southard was unaware that both Ms. Miles and Mr. Smith worked at SGWM until Mr. Smith opened the firm's door for him on October 23, 2024. [Id. at ¶¶ 9–10]. Upon recognizing Mr. Smith, Mr. Southard confirmed his identity and working relationship with Kipper. [Id. at ¶ 11]. Nevertheless, Ms. Miles continued to represent Mr. Southard until his domestic matter resolved on November 18, 2024. [Id. at ¶ 13].

Mr. Southard's counsel learned of the potential conflict on October 24, 2024—a day after Mr. Southard recognized Mr. Smith at SGWM. [Dkt. 139, at 3]. On October 30, 2024, Mr. Southard's counsel informed Mr. Smith of the potential conflict and asked him whether he believed a conflict existed. [Id.]. Mr. Smith responded on November 1, 2024, stating he was "looking into [it]" and would "follow up." [Id.].

On November 25, 2024, Mr. Smith spoke with the Office of General Counsel of the State Bar of Georgia ("OGC"), which allegedly found no conflict of

interest given the facts Mr. Smith presented. [Dkt. 142 – Def.'s Resp. to Pl.'s Mot. to Disqualify, at 4–5]. The same day, Mr. Smith emailed Mr. Southard's counsel his position that no conflict existed. [Id. at 5]. Later that evening, Mr. Southard's counsel filed his Motion to Disqualify Mr. Smith. [Dkt. 139].

Kipper filed its Response to the Motion on December 9, 2024, arguing that no conflict has ever existed. [Dkt. 142, at 14]. In the alternative, Kipper asserts that Mr. Southard waived any potential conflict due to his constructive knowledge of SGWM's representation of Kipper and delay in bringing his Motion. [Id.]. On December 23, 2024, Mr. Southard replied, arguing that Kipper ignores the conflict that existed between two concurrent clients and misplaced the onus of identifying the conflict on Mr. Southard—as opposed to Mr. Smith and SGWM. [Dkt. 143 – Pl.'s Reply, at 2, 4–5].

## DISCUSSION

### I.  Legal Standard

When reviewing a motion to disqualify, federal district courts are guided by two sources of authority: (1) the local rules of the court and (2) federal common law. Hermann v. GutterGuard, Inc., 199 Fed. Appx. 745, 752 (11th Cir. 2006) (citations omitted). The Georgia Rules of Professional Conduct—along with this

Court's decisions interpreting those rules—serve as the ethical guidelines for the members of the Northern District of Georgia bar. LR 83.1(c).

"A disqualification order 'is a harsh sanction, often working substantial hardship on the client' and should therefore 'be resorted to sparingly.'" Hermann, 199 Fed. Appx. at 752 (quoting Norton v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 n.4 (11th Cir. 1982)). As such, the moving party bears the burden of showing adequate grounds for disqualification. In re Bellsouth Corp., 334 F.3d 941, 961 (11th Cir. 2003). "Because a party is presumptively entitled to the counsel of his own choice, that right may be overridden only if 'compelling reasons' exist." Id. (quoting Tex. Catastrophe Prop. Ins. Ass'n v. Morales, 975 F.2d 1178, 1181 (5th Cir. 1992)).

A disqualification order may arise from an ethical violation; however, "'the court may not simply rely on a general inherent power to admit and suspend attorneys . . . .'" Hermann, 199 Fed. Appx. at 752 (quoting Schlumberger Tech., Inc. v. Wiley, 113 F.3d 1553, 1561 (11th Cir. 1997)); see also Ga. Rules of Prof'l Conduct R. 1.7 cmt. 15 (stating that an alleged ethical violation "should be viewed with caution" because "it can be misused as a technique of harassment"). Rather, the district court must conclude that a specific ethical rule was violated. Schlumberger, 113 F.3d at 1561. In the present case, Mr. Southard places three

4

ethical rules at issue: Rule 1.6, Rule 1.7, and Rule 1.9. [See Dkt. 139, at 7–8 (identifying "potential ethical violations of Rules 1.6, 1.7, and 1.9")].

First, this Court must determine whether Mr. Smith violated Rule 1.7—the general rule detailing conflicts of interest. The Rule states that "[a] lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client," except when the affected client provides informed consent, in writing. Ga. Rules of Prof'l Conduct R. 1.7. The Rule also identifies specific instances where informed consent is "not permissible." Ga. Rules of Prof'l Conduct R. 1.7(c). Comments to the Rule clarify that "a lawyer ordinarily may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated." Ga. Rules of Prof'l Conduct R. 1.7 cmt. 4.

Second, this Court must determine whether Mr. Smith violated Rule 1.9—the rule governing conflicts with former clients. Rule 1.9 states "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Ga. Rules of Prof'l Conduct R. 1.9.

Comments to the Rule clarify that "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential information as would normally be obtained in the prior representation would materially advance the client's position in the subsequent matter." Ga. Rules of Prof'l Conduct R. 1.9 cmt. 3.

Third, this Court must determine whether Mr. Smith violated Rule 1.6, which protects confidential information gathered throughout the attorney-client relationship. Ga. Rules of Prof'l Conduct R. 1.6. Specifically, the Rule requires that attorneys "maintain in confidence all information gained in the professional relationship with a client . . . unless the client gives informed consent . . . ." Id.

## II.   Analysis

Mr. Southard seeks to disqualify Mr. Smith from representing Kipper because of an alleged conflict arising from SGWM's representation of Mr. Southard. Specifically, Mr. Southard argues that Mr. Smith and SGWM improperly represented both Kipper and Mr. Southard from July 1, 2024, until November 18, 2024. [Dkt. 143, at 2–4]. Kipper argues that Mr. Smith's continued representation comports with the ethical rules because (1) the two matters are unrelated and (2) Mr. Southard waived any potential conflict. [Dkt. 142]. While this Court's ethical rules generally forbid concurrent representation of directly

6

adverse clients, this Court will not disqualify Mr. Smith because the nature of the litigation protects the propriety of his representation.

> **A. The representation does not violate Rule 1.7 because the nature of Mr. Southard's qui tam action justifies an exception to the Rule's general rule against representing directly adverse clients.**

First, Mr. Southard claims that SGWM's concurrent representation of Kipper and Mr. Southard created an impermissible conflict under Rule 1.7. [Dkt. 143, at 2]. Rule 1.7 prohibits a lawyer from representing a client when "the lawyer's duties to another client . . . will materially and adversely affect the representation of the client . . . ." Ga. Rules of Prof'l Conduct R. 1.7.

Here, Mr. Smith has defended Kipper against Mr. Southard's lawsuit since October 2023. [Dkt. 84]. Mr. Southard hired Ms. Miles in July 2024. [Dkt. 139-1, at ¶ 5]. As members of SGWM, Ms. Miles' and Mr. Smith's conflicts are each imputed to the other. Hodge v. URFA-Sexton, LP, 295 Ga. 136, 139 (2014). Accordingly, this Court recognizes that Mr. Smith simultaneously maintained a duty towards both Kipper and Mr. Southard. The question remains whether these duties conflicted in such a way that "materially and adversely affect" Mr. Smith's ongoing representation of Kipper. Ga. Rules of Prof'l Conduct R. 1.7.

Mr. Southard argues that the concurrent representation of both him and Kipper "hinders [Mr. Smith's] ability to recommend or advocate for all possible

7

positions on behalf of [his] clients." [Dkt. 143, at 3 (citing Ga. Rules of Prof'l Conduct R. 1.7 cmt. 4)]. Kipper argues that no conflict existed because SGWM engaged Mr. Southard and Kipper on unrelated matters. [See Dkt. 142, at 10 (asserting that no conflict exists under Rule 1.7 because there is no "significant risk that Miles', Smith's, or SGWM's own interests or duties to Kipper in this case will materially and adversely affect the representation of Mr. Southard")].

While the comments cited by Mr. Southard generally forbid concurrent representation of directly adverse clients, this Court highlights that the language is not absolute. For example, Comment 4 of Rule 1.7 states "a lawyer *ordinarily* may not act as advocate against a person the lawyer represents in some other matter, even if it is wholly unrelated." Ga. Rules of Prof'l Conduct R. 1.7 cmt. 4 (emphasis added). Comment 8 of Rule 1.7 uses the same language, further noting "there are circumstances in which a lawyer may act as advocate against a client." Ga. Rules of Prof'l Conduct R. 1.7 cmt. 8.[1]

Comment 8 later adds, "the propriety of concurrent representation can depend on the nature of the litigation." Id. As an example, it states "a suit charging

---

[1] Comment 8 provides examples of these circumstances but does not include an example matching the present case. See Ga. Rules of Prof'l Conduct R. 1.7 cmt. 8 (listing two possible exceptions). However, nothing in Comment 8 suggests that the enumerated examples serve as an exhaustive list.

8

fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation." Id. Thus, this Court must determine whether the nature of this litigation justifies an exception to Rule 1.7's broad rejection of representing directly adverse clients.

Here, Mr. Smith represents Kipper against Mr. Southard's qui tam False Claims Act lawsuit. [Dkt. 142, at 1]. A qui tam action allows an individual "to bring an action on their own and the government's behalf." United States ex rel. Matheny v. Medco Health Sols., Inc., 671 F.3d 1217, 1219 (11th Cir. 2012) (citing Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562, 565 n.2 (11th Cir. 1994) (per curiam)). In the present case, Mr. Southard alleges that Kipper violated its agreement with the Government by improperly selling goods at an inflated price. [Dkt. 1 – Pl.'s Compl., at 3]. Kipper has not asserted any claims against Mr. Southard. Thus, the action focuses on whether Kipper fulfilled its obligations to the Government irrespective of Mr. Southard's dealings with Kipper.

Referencing the example provided in Comment 8, Mr. Southard's qui tam lawsuit does not raise a high degree of conflict because it does not involve serious inquiry into Mr. Southard himself. Accordingly, Mr. Smith's concurrent representation of Mr. Southard and Kipper does not raise propriety concerns under Rule 1.7.

9

However, the Court notes Kipper places undue reliance on Mr. Southard's actions prior to the Motion. In its Response, Kipper argues that Mr. Southard should have known of the potential conflict and delayed in asserting the alleged conflict. [Dkt. 142, at 14]. This argument fails for two reasons.

First, Kipper ignores SGWM and Mr. Smith's duty to identify potential conflicts, delegating the onus to Mr. Southard—the client. The Rules of Professional Conduct regulate attorneys, not their clients. Hermann, 199 Fed. Appx. at 752. Here, the current dilemma could have been avoided with a simple conflict check, which either (1) never occurred or (2) was insufficient. Simply put, Mr. Southard is not to blame for SGWM's failure to identify the potential conflict.

Second, Kipper ignores its own contribution to this Motion's delay. Seven days elapsed between Mr. Southard recognizing Mr. Smith at SGWM's office and his counsel's email raising the potential conflict with Mr. Smith. [Dkt. 139, at 3]. It took Mr. Smith and SGWM 26 days to respond with their position on the issue. [Id.]. Mr. Southard filed the Motion on the same day. [Id.]. Mr. Southard should not be punished for attempting to resolve this issue with Kipper in good faith, as most of the delay is attributable to Mr. Smith and SGWM.

Thus, this Court's reasoning does not hinge upon Mr. Southard's actions. Mr. Smith has avoided disqualification under Rule 1.7 only because the current

litigation satisfies a narrow exception to our ethical rules' broad rejection of representing directly adverse clients. Accordingly, this Court holds that Mr. Smith and SGWM's continued representation does not violate Rule 1.7.

> **B.  The representation does not violate Rule 1.9 because the two matters are not the same or substantially related.**

Second, Mr. Southard argues that Mr. Smith's continued involvement in this action violates Rule 1.9 because of an impermissible conflict between a current and former client. Rule 1.9 prevents an attorney from representing clients adverse to former clients on "same or substantially related matters." Ga. Rules of Prof'l Conduct R. 1.9(a). Matters are considered the "same or substantially related . . . if there . . . is a substantial risk that confidential information as would normally be obtained in the prior representation would materially advance the client's position in the subsequent matter." Ga. Rules of Prof'l Conduct R. 1.9 cmt. 3. Thus, this Court must determine if there is a substantial risk that Mr. Smith and SGWM obtained confidential information during Mr. Southard's domestic matter that would advance Kipper's position in the qui tam lawsuit.

Mr. Southard alleges that Mr. Smith and SGWM "obtained detailed and intimate information about [his] personal life as well as information about his financials, personal assets, and properties." [Dkt. 139, at 6]. Further, Mr. Southard argues that this information grants Kipper "an unfair advantage" in accessing his

11

resources in pursuing the action, negotiating potential settlements, and cross-examining him. [Id. at 7].

While this Court recognizes that Mr. Smith and SGWM likely acquired sensitive financial information, it is unlikely that Mr. Southard's financial information would materially advance Kipper's position in the present case. As discussed earlier, this qui tam action involves Kipper's obligation to the Government. [Dkt. 1, at 3]. Mr. Southard's domestic matter involved claims for "additional child support, additional alimony, and requested changes to [a] standing custody agreement." [Dkt. 139-1, at ¶ 5]. While Mr. Southard's financial information was central to the resolution of his domestic matter, it bears no weight in determining whether Kipper violated the False Claims Act.

Although Mr. Southard argues his financial information exposes his capacity to pursue or settle the case, Rule 1.9 does not forbid subsequent representation against a former client solely based upon access to general financial information. See Samnick v. Goodman, 354 Ga. App. 805, 813 (2020) ("'[T]he mere fact that an attorney has general financial information about a former client does not necessarily warrant disqualification.'") (citing Benson v. McNutt, 289 Ga. App. 565, 566 (2008)). Rule 1.9 also requires a substantial relationship between the confidential information and the pending matter. See Ga. Rules of Prof'l Conduct

R. 1.9 cmt. 3 ("[A] lawyer who has previously represented a client in securing environmental permits to build a shopping center . . . would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent."); see also Benson, 289 Ga. App. at 566 (stating that the party moving for disqualification is "required to show a substantial relationship between the attorney's knowledge of [the] assets and the pending suit"). Here, Mr. Southard has been unable to show how Mr. Smith and SGWM's knowledge of his finances relates to the pending qui tam action. The Court accordingly holds that Mr. Smith and SGWM's continued representation of Kipper does not violate Rule 1.9.

> C. **The representation does not violate Rule 1.6 because there is no indication that Mr. Smith has disclosed confidential information about Mr. Southard.**

Third, Mr. Southard briefly argues that Mr. Smith and SGWM's representation of Mr. Southard may conflict with Rule 1.6. Rule 1.6 requires that "[a] lawyer shall maintain in confidence all information gained in the professional relationship with a client." Ga. Rules of Prof'l Conduct R. 1.6(b). Here, Mr. Southard has failed to assert that either Mr. Smith or SGWM has disclosed any of his confidential information. Therefore, this Court holds that Mr. Smith and SGWM's continued representation of Kipper does not violate Rule 1.6.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. Southard's Motion to Disqualify attorney Mr. Smith and SGWM from representing Kipper. [Dkt. 139].

**SO ORDERED** this 16th day of January, 2025.

_____
**RICHARD W. STORY**
United States District Judge